## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAY DIPUMA, individually, and on behalf of all others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **NO. _____** |
| **v.** | **(Document Filed Electronically on January 21, 2021)** |
| **BRIDGESTONE AMERICAS, INC., and BRIDGESTONE RETAIL OPERATIONS, LLC,** | **Jury Trial Demanded** |
| **Defendants.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### Nature of the Action, Jurisdiction, and Venue

1. This is an individual and collective/class action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 207(a) & 216(b), the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. § 34:11-58 *et al.*, the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. § 34:11-4.1 *et al.*, the wage laws of the other states in which Defendants engaged in the violations explained in this lawsuit, and the common law of contracts.

2. Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the state law claims, 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332(d).

3. The actions and policies alleged to be unlawful were committed in whole or in part around Wall, Brick, West Long Branch, Red Bank and Toms River, New Jersey, where Plaintiff worked for Defendants. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the District of New Jersey.

**Parties**

4.     Plaintiff Ray DiPuma ("Plaintiff") resided in Brick, NJ, during the time relevant to this lawsuit. Plaintiff worked for Defendants Bridgestone Americas, Inc., specifically the subsidiary Bridgestone Retail Operations, LLC, from in or about February 2008 through in or about August 2019 at various stores owned and operated by Defendants.

5.     Plaintiff has regularly performed work within the state of New Jersey.

6.     Defendant Bridgestone Americas, Inc. ("Defendant Bridgestone Americas" or "Bridgestone Americas"), is a global leader in tire technology with a family of enterprises including more than 50 production facilities and 55,000 employees throughout the Americas. Defendant Bridgestone Americas, Inc., maintains its corporate headquarters at 200 4th Avenue S., Nashville, TN 37201.

7.     Defendant Bridgestone Retail Operations, LLC (hereafter "Defendant Bridgestone Retail" or "Bridgestone Retail"), is a subsidiary of Bridgestone Americas, Inc., operating more than 2,000 stores throughout the United States specializing in consumer replacement tires and complete automotive maintenance and repairs.  Defendant Bridgestone Retail maintains its headquarters at 200 4th Avenue S., Nashville, TN 37201.

8.     At all relevant times Defendants have been an enterprise engaged in interstate commerce with annual revenues in excess of $500,000 and have been subject to the provisions of Section 203(s)(1) of the FLSA.

9.     Defendants employ in excess of 10,000 full-time employees.

10.     Defendants have annual revenues in excess of $1 billion.

11.     Defendants have regularly employed individuals in the state of New Jersey, as well as the states surrounding New Jersey (including New York, Pennsylvania and Delaware),

2

and elsewhere throughout the United States, in the performance of work on behalf of Defendants and are subject to the provisions of the NJWHL, the NJWPL, and the wage laws of the other states in which Defendants operated.

## Statement of Claims

12.    Plaintiff worked for Defendants as a Service Manager/Tire Manager from in or about February 2008 through in or about August 2019.

13.    During his employment with Defendants, Plaintiff worked at the stores operated by Defendants in Brick, West Long Branch, Red Bank, Wall and Toms River, NJ.

14.    Throughout his employment for Defendants, Plaintiff was a W-2 employee.

15.    Plaintiff's duties as a Service Manager/Tire Manager were:  oversee the performance of tasks related to the transportation, sale, installation, removal, and servicing of tires and more generally the servicing of automobiles and other vehicles.

16.    The aforementioned automobiles and other vehicles consist of a broad range of vehicles that are utilized and serviced by Defendants through their various stores in New Jersey and other states.

17.    As part of his regular duties, Plaintiff was required to, and in fact did, transport vehicle parts—including but not limited to tires—as part of the channels of interstate commerce through which Defendants sell tires and other vehicle parts, and service vehicles, at their various stores in New Jersey and other states.

18.    For example, as part of his regular duties, Plaintiff transported tires between Bridgestone stores, transported tires from dealerships to Bridgestone stores, and transported tires and other vehicle parts from auto-part stores to Bridgestone stores.

19.    This transportation work performed by Plaintiff was part of his regular duties, and

he was reimbursed by Defendants for the mileage of performing this transportation.

20.    In addition to transporting these goods as part of his regular duties, Plaintiff also regularly transported persons as part of his regular duties for Defendants.

21.    Specifically, as part of his regular duties, Plaintiff transported customers who needed to leave their vehicles temporarily at Defendants' stores for things like tire installation or other vehicle servicing.

22.    Beyond these forms of transportation work performed by Plaintiff, Plaintiff was also engaged directly in transportation servicing through the work he performed on Defendants' store locations.

23.    Broadly speaking, Defendants' customers break down between recurring commercial sales and servicing (under master services agreements) and non-recurring sales and servicing.

24.    Regarding the recurring commercial sales and servicing, Defendants have recurring contracts with large transportation companies—such as Hertz and Enterprise—under which Plaintiff and other of Defendants' employees provided installation and other servicing work of various kinds on vehicles.

25.    With respect to the recurring installation and servicing work that was performed under recurring contracts with large transportation companies, Plaintiff and other of Defendants' employees were in practical effect part of the transportation work and stream of interstate commerce in which those vehicles were being used.

26.    Regarding the non-recurring sales and servicing, Plaintiff and other of Defendants' employees provided installation and other servicing work of various kinds as needed on the vehicles brought into Defendants' stores for servicing.

27. With respect to the non-recurring sales and servicing, Plaintiff and other of Defendants' employees were in practical effect part of the transportation and interstate commerce in which those vehicles were being used.

28. Plaintiff was paid as an hourly employee (most recently at an hourly rate of around $19.00 per hour).

29. Plaintiff was also paid certain bonuses based on the sale of tires and services.

30. Plaintiff typically was scheduled to work five shifts each week, with each shift usually being scheduled for 8.5 hours, but also regularly worked 10-hour shifts.

31. Plaintiff was a non-exempt employee within the meaning of the FLSA, the NJWHL, and the NJWPL.

32. Plaintiff regularly worked more than 40 hours in workweeks.

33. Plaintiff was entitled to payment of his promised straight time wages for the hours worked in all workweeks, including both non-overtime workweeks and overtime workweeks.

34. Plaintiff was entitled to payment of overtime at one-and-one-half times his regular rate of pay for the hours worked in excess of forty hours in workweeks.

35. For tracking the time Plaintiff worked for Defendants, Plaintiff clocked in and out each day by punching into a computerized time-keeping system when he started to work at the beginning of the day, when (if at all) he took a lunch break, and when he stopped working at the end of the day.

36. During the entire period of his employment with Defendants, Plaintiff was subjected to certain common, corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common policies and practices are described below in paragraphs 58 through 71.

37.     As a Manager of Tire Sales as well as a Service Manager, Plaintiff reported to a Store Manager, who reported to a District/Area Manager, who reported to a Regional Manager, who reported to a Regional Manager VP, who reported to executives at Defendants' headquarters.

38.     The Regional Manager was and is responsible for what Defendants refer to as the "Mid-Atlantic Region."  This region includes parts of New Jersey, New York, Pennsylvania and Delaware.

39.     In the last six years (*i.e.*, since January 20, 2015), there have been hundreds of other Managers of Tire Sales and Service Managers performing the same duties as Plaintiff working at Defendants' stores in New Jersey and the states near New Jersey, including those states included in Defendants' Mid-Atlantic Region. ("Other Managers of Tire Sales/Service Managers").

40.     The Other Managers of Tire Sales/Service Managers performed the same duties as Plaintiff that are described above in paragraphs 15 through 27.

41.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have been treated as hourly employees (with hourly rates around $20.00 an hour).

42.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have been treated as W-2 employees.

43.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have been paid bonuses based on the sale of tires and services.

44.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have tracked time worked for Defendants by clocking in each day and out each day by punching into a computerized time-keeping system when they start to work at the beginning of the day, when (if

at all) they take a lunch break, and when they stop working at the end of the day.

45.     The timekeeping system used by the Other Managers of Tire Sales/Service Managers is the same timekeeping system as the one that Plaintiff punched in and out of since he began working for Defendants.

46.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have regularly worked overtime.

47.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have been subject to certain common corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common policies and practices are described below in paragraphs 58 through 71.

48.     The Other Managers of Tire Sales/Service Managers, like Plaintiff, have reported to their respective Store Managers, who in turn report to their respective District/Area Managers, who in turn report to a Regional Manager VP who reports to executives at Defendants' headquarters.

49.     In other words, the Other Managers of Tire Sales/Service Managers have the same chain of command as Plaintiff:  Manager of Tire Sales/Service Managers, to Store Manager, to District/Area Manager, to Regional Manager VP, to Defendants' executive headquarters.

50.     In addition to Plaintiff and the Other Managers of Tire Sales/Service Managers, there have also been hundreds of other hourly workers ("Other Hourly Workers") employed in Defendants' stores in New Jersey and the other stores in the Mid-Atlantic Region, including Sales Representatives and Maintenance Technicians.

51.     The Other Hourly Workers have some overlapping duties with Plaintiff and the

Other Managers of Tire Sales/Service Managers, but they have some duties that are different.

52.     As relevant to this lawsuit, the Other Hourly Workers (like Plaintiff and the Other Mangers of Tire Sales/Service Managers) engage directly in transportation servicing through the work they perform on Defendants' store locations.

53.     The Other Hourly Workers engage directly in transportation servicing in the ways described above in paragraphs 22 through 27.

54.     Like Plaintiff and the Other Managers of Tire Sales/Service Managers, the Other Hourly Workers are W-2 employees of Defendants who have used the same timekeeping systems and reported up through the same chains of command starting with their respective Store Managers.

55.     Like Plaintiff and the Other Managers of Tire Sales/Service Managers, the Other Hourly Workers have punched into and out of the common timekeeping system (as described above in ¶¶ 44 & 45), have regularly worked overtime, and have been subject to certain common corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common policies and practices are described below in paragraphs 58 through 71.

56.     Plaintiff, the Other Managers of Tire Sales/Service Managers, and the Other Hourly Workers are similarly situated employees for purposes of this lawsuit.  Hereinafter, this Complaint refers to Plaintiff, the Other Managers of Tire Sales/Service Managers, and the Other Hourly Workers collectively as the "Putative Class Members".

57.     Defendants, sophisticated employers with knowledge of their obligations under the FLSA and state wage-and-hour laws including the NJWHL, the NJWPL, and the wage laws of the other state in the Mid-Atlantic Region, have understood they are required to maintain accurate records of time worked by the Putative Class Members.

Modification of Time Records:

58.    Notwithstanding this knowledge, Defendants have knowingly and intentionally modified the time records of Plaintiff and the other Putative Class Members since at least January 2018.

59.    This falsification of time records has resulted in the systematic understatement of hours worked by Plaintiff and the other Putative Class Members, which, because they are hourly employees, directly results in their underpayment of wages owed.

60.    One manner in which this falsification occurs is the following:  in Defendants' computerized timekeeping system, Defendants change (override) the Putative Class Members' raw timekeeping entries by adding a lunchbreak where Plaintiff and the other Putative Class Members did not take or record such a lunchbreak.  The insertion of these lunchbreaks has resulted in the systematic understatement of hours worked (and therefore wages owed) to Plaintiff and the other Putative Class Members.

61.    Defendants also routinely and as a matter of common corporate policy and practice alter (override) the Putative Class Members' time records in order to reduce the compensable work time for times other than the lunch breaks.  In particular, these overrides are made to conform to a policy and practice of preventing and/or minimizing overtime hours—thus the overrides are targeted toward workweeks in which, without the overrides, a Putative Class Member would otherwise be entitled to substantial overtime.

62.    Defendants regularly alter (override) the time records for times other than lunchbreaks for the same reason they alter (override) the time records for lunchbreaks:  reduce the compensable work time and reduce or avoid the payment of overtime.

63.    The software systems that Defendants use to track the hours worked and wages

owed to Plaintiff and the other Putative Class Members tracks the workers' raw time entries and also tracks the alterations (overrides) made by Defendants to understate and suppress the hours and wages for the Putative Class Members.

64.     This policy and practice of altering (overriding) time records results in violations of the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic Region, and the common law.

Systematic Undercounting of Time Worked:

65.     In addition to altering (overriding) the time records of Plaintiff and the other Putative Class Members, Defendants have also as a matter of common corporate policy and practice systematically undercounted time worked by Plaintiff and the similarly situated hourly workers.

66.     Specifically, the time-keeping system implemented and maintained by Defendants at the corporate level and applied in all of its stores in the Mid-Atlantic Region, including the stores where Plaintiff worked, has included a feature that delays by multiple minutes the punch-in time (i.e., the "start" time) for each shift worked by Plaintiff and the other Putative Class Members.

67.     This feature of Defendants' time-keeping system appears to be designed to "shave" time from the hourly employees—notably, the time-keeping system accurately tracks the punch-out time for a given shift (i.e., the "end" time), but it systematically delays the punch-in time, thus misstating the hours worked by Plaintiff and the other Putative Class Members in a manner that is always and systematically in favor of the Defendants.

68.     The result of this automatic time-shaving is that the work time credited to Plaintiff and the other Putative Class Members is systematically less than the actual work time.

69.    The result of Defendants' systematic reduction in the amount of work time credited to Plaintiff and the other Putative Class Members is that Plaintiff and the other Putative Class Members are denied regular wages and overtime wages otherwise due.

70.    Defendants' common corporate policies and practices of failing to maintain accurate records of time worked, falsifying time records, and systematically undercounting time worked by Plaintiff and the similarly situated hourly workers, with the resulting failure to pay straight time and overtime wages due, are violations of the FLSA, the NJWHL, the NJWPL, and the wage law of the other states in the Mid-Atlantic Region, and the common law.

71.    Defendants have knowingly and intentionally violated the FLSA's explicit requirement at 29 U.S.C. §211(c) that they maintain accurate records of time worked, and at 29 U.S.C. §207(a) that they pay for overtime worked.

<u>Miscalculating Overtime Pay by Failing to Account for Bonuses:</u>

72.    In addition to systematically modifying time records (*supra* ¶¶ 58-64) and shaving time (*supra* ¶¶ 65-71), Defendants have also knowingly and intentionally violated the FLSA in another way:  Defendants have failed to properly include bonus pay into the calculation of Plaintiff's and certain other Putative Class Members' regular rate of pay for purposes of calculating overtime compensation.

73.    Hereinafter, this Complaint refers to the Putative Class Members who received bonuses as part of their compensation as "Bonus Recipients," a subclass that includes among others Plaintiff, Other Managers of Tire Sales/Service Managers and Sales Representatives.

74.    Plaintiff and the Bonus Recipients have been paid weekly bonuses based on performance such as tire sales, warranty services, and credit card applications.

75.    These bonuses have regularly been earned in overtime weeks.

76.     Under the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic Region, these bonuses must be included in an employee's total compensation for purposes of calculating their overtime pay.

77.     Notwithstanding the legal obligation to include any bonuses earned in overtime weeks in the calculation of overtime due to Plaintiff and the other Bonus Recipients, Defendants have failed to do so as a matter of common corporate policy and practice.

78.     Defendants, sophisticated employers with knowledge of their obligations under the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, have understood they are required to include all compensation, including bonuses, when determining the rate for overtime payments.

Failure to Pay Promised Wages:

79.     Defendants have also violated the common law of contract by failing to pay the promised wages due to Plaintiff and the other Putative Class Members.

80.     Defendants made clear and definite promises to Plaintiff and the other Putative Class Members that they would be paid a certain hourly amount for each hour, or increment of an hour, worked.

81.     Plaintiff and the other Putative Class Members have acted on this promise expecting to be paid for time worked at the promised hourly amount.

82.     The promise by Defendants, and the actions of Plaintiff and the other Putative Class Members in accepting this promise by performing the work, created an enforceable contractual duty by Defendants to pay the promised hourly amount.

83.     Defendants have no good-faith basis on which to withhold the promised wages.

84.     As a result of Defendants' breaches, Plaintiff and the other Putative Class

Members have been denied the benefit of the bargain, and have suffered damages in the form of unpaid wages.

85.     Defendants' violations of the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, and the common law have been knowing, willful and in reckless disregard of the law.

### Collective/Class Action Averments

86.     As noted above, there have been hundreds, perhaps thousands, of similarly situated hourly workers (*i.e.*, Putative Class Members as defined in ¶ 56 above) who have been employed by Defendants since January 2015 (six years prior to the filing of this Complaint).

87.     There also have been hundreds, perhaps thousands, of similarly situated hourly workers (*i.e.*, Putative Class Members as defined in ¶ 56 above) who have been employed by Defendants since January 2018 (three years prior to the filing of this Complaint).

88.     The Putative Class Members, like Plaintiff, have been subject to common corporate rules and policies regarding time-keeping that result in their being denied regular pay and overtime pay in violation of the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, and the common law, as described in paragraphs 58 through 71 above.

89.     The Putative Class Members have all been W-2 employees of Defendants.

90.     The Putative Class Members have regularly worked overtime hours.

91.     The Putative Class Members have been denied payment of their straight wages and overtime wages due to Defendants' knowing violation of its obligation to maintain accurate records of time worked, and to pay its hourly employees for all time worked, pursuant to the common timekeeping policies and practices described above in paragraphs 59 through 85.

92.     Defendants have knowingly and intentionally failed to pay the Putative Class Members for their overtime hours either at the straight rate or proper overtime rate.

93.     Defendants have also failed to properly calculate overtime due to Plaintiff and the other Bonus Recipients, as described above in paragraphs 72 through 78.

94.     Defendants' failure to pay overtime due to the Putative Class Members over the past three years, their failure to pay straight time due to the Putative Class Members either in non-overtime workweeks or in overtime workweeks, and their failure to maintain accurate records of time worked by these hourly employees has been in violation of the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, and the common law.

95.     As with Plaintiff, Defendants have also, as a matter of common policy, breached their contractual duty to pay the Putative Class Members their promised straight wages for all hours worked.

96.     Defendants have knowingly and intentionally violated the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, and the common law in failing to pay straight wages and overtime wages and failing to maintain accurate time records of the employees they paid hourly.

97.     Furthermore, Defendants have also knowingly and intentionally violated the FLSA, the NJWHL, the NJWPL, and the wage laws of the other states in the Mid-Atlantic region, and the common law by failing, as a matter of common policy, to account for bonuses paid to the Bonus Recipients when calculating the overtime pay for these workers.

98.     Plaintiff and the other Bonus Recipients as defined above in paragraph 73 routinely received bonus payments.

14

99.    Defendants did not include these bonuses when calculating the proper overtime rate used to determine overtime pay when Plaintiff and the other Bonus Recipients worked overtime.

**COUNT I:  VIOLATION OF THE FLSA (Overtime)**
**Individual and Collective Action for all Putative Class Members**
**(Geographic Scope: New Jersey and the Mid-Atlantic Region)**

100.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

101.    Plaintiff and the other Putative Class Members are employees of Defendants within the meaning of the FLSA.

102.    Defendants are employers within the meaning of the FLSA.

103.    Plaintiff and the other Putative Class Members have been non-exempt within the meaning of the FLSA.

104.    Plaintiff and the other Putative Class Members have regularly worked more than forty hours per week (overtime work).

105.    Plaintiff and the other Putative Class Members have been subjected to common corporate policies and practices that result in the falsification of time records and, in turn, the underpayment of regular wages and overtime wages otherwise due, as described in paragraphs 58 through 71 above.

106.    Defendants' failure to pay the straight wages and overtime wages due in overtime weeks to Plaintiff and the other Putative Class Members has violated and continues to violate the FLSA.

107.    For at least the past three years, Defendants' violations of the FLSA are knowing, willful, and in reckless disregard of the FLSA's record-keeping and overtime requirements.

108.    Plaintiff and the other Putative Class Members are entitled to recover from

Defendants the overtime pay improperly withheld by Defendants, plus interest, attorneys' fees, and costs.

109.    Plaintiff and the other Putative Class Members are also entitled to recover liquidated damages under 29 U.S.C. §§ 207(a) & 216(b).

**COUNT II:  VIOLATION OF THE NJWHL (Overtime)**
**Individual and Class Action for all Putative Class Members**
**(Geographic Scope:  New Jersey)**

110.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

111.    Plaintiff and the other Putative Class Members in New Jersey have been employees of Defendants within the meaning of the NJWHL, N.J. Stat. § 34:11-56a *et seq*.

112.    There are more than 500 Putative Class Members.

113.    Defendants are employers of the Putative Class Members within the meaning of the NJWHL.

114.    Plaintiff and the other Putative Class Members have been non-exempt within the meaning of the NJWHL.

115.    Plaintiff and the other Putative Class Members have regularly worked more than forty hours per week (overtime work).

116.    Plaintiff and the other Putative Class Members have been subjected to common corporate policies and practices that result in the falsification of time records and, in turn, the underpayment of overtime wages otherwise due under the NJWHL.

117.    Defendants' failure to pay the overtime wages due in overtime weeks to Plaintiff and the other Putative Class Members has violated and continues to violate the NJWHL.

118.    For at least the past six years, Defendants' violations of the NJWHL are knowing, willful, and in reckless disregard of the NJWHL's overtime requirements.

119.    Plaintiff and the other Putative Class Members are entitled to recover from Defendants the overtime pay improperly withheld by Defendants, plus liquidated damages, interest, attorneys' fees, and costs.

**COUNT III:  VIOLATION OF THE NJWPL**
**Individual and Class Action for all Putative Class Members**
**(Geographic Scope:  New Jersey)**

120.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

121.    Plaintiff and the other Putative Class Members in New Jersey have been employees of Defendants within the meaning of the NJWPL, N.J. Stat. § 34:11-4.1 *et al.*,

122.    There are more than 500 Putative Class Members.

123.    Defendants are employers of the Putative Class Members within the meaning of the NJWHL.

124.    Plaintiff and the other Putative Class Members have been non-exempt within the meaning of the NJWHL.

125.    Plaintiff and the other Putative Class Members have been subjected to common corporate policies and practices that result in the falsification of time records and, in turn, the underpayment of regular wages otherwise due under the NJWPL.

126.    Defendants' failure to pay the straight wages due in overtime weeks to Plaintiff and the other Putative Class Members has violated and continues to violate the NJWPL.

127.    For at least the past six years, Defendants' violations of the NJWPL are knowing, willful, and in reckless disregard of the NJWPL's wage payment requirements.

128.    Plaintiff and the other Putative Class Members are entitled to recover from Defendants the regular wages improperly withheld by Defendants, plus liquidated damages, interest, attorneys' fees, and costs.

## COUNT IV:  BREACH OF CONTRACT
## Individual and Class Action for all Putative Class Members
### (Geographic Scope: New Jersey and the Mid-Atlantic Region)

129.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

130.    Plaintiff and the other Putative Class Members were promised by Defendants to be paid an hourly rate of pay for work performed.

131.    Plaintiff and the other Putative Class Members have acted in reliance on the promise made by Defendants.

132.    The promise by Defendants, and the actions by Plaintiff and the other Putative Class Members taken in reliance on this promise, created an enforceable contractual duty of Defendants to pay Plaintiff and the other Putative Class Members the promised hourly rate for work performed.

133.    Despite these promises Defendants failed as a matter of common corporate policy to pay Plaintiff and the other Putative Class Members at the promised hourly rate for time worked.

134.    Defendants' failure to pay the promised hourly rate to Plaintiff and the other Putative Class Members constitutes a breach of their contractual duty to Plaintiff and similarly situated workers.

135.    Defendants have no good faith basis for breaching their duty to Plaintiff and the other Putative Class Members.

136.    Plaintiff and the other Putative Class Members are entitled to the benefit of the bargain (unpaid wages), plus interest and compensatory damages consistent with the common law.

18

**COUNT V:  VIOLATION OF THE FLSA (Miscalculation of Overtime Premium Rate)**
**Individual and Collective Action for all Bonus Recipients**
**(Geographic Scope: New Jersey and the Mid-Atlantic Region)**

137.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

138.    As noted above, this Complaint refers to Putative Class Members who received bonuses as part of their compensation as "Bonus Recipients," a subclass that includes among others Plaintiff, Other Managers of Tire Sales/Service Managers and Sales Representatives.

139.    Plaintiff and the other Bonus Recipients have regularly worked in excess of 40 hours in workweeks.

140.    Defendants have failed, as a matter of common corporate policy and practice, to include bonuses in the calculation of the overtime due in overtime weeks for Plaintiff and the other Bonus Recipients.

141.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is a violation of the FLSA.

142.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is knowing and willful.

143.    For these violations, Plaintiff and the other Bonus Recipients are entitled to overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs under the FLSA.

**COUNT VI:  VIOLATION OF THE NJWJL (Miscalculation of Overtime Premium Rate)**
**Individual and Class Action for all Bonus Recipients**
**(Geographic Scope:  New Jersey)**

144.    Plaintiff and the other Bonus Recipients have been paid bonuses in addition to their hourly rates.

145.    Plaintiff and the other Bonus Recipients have regularly worked in excess of 40

hours in workweeks.

146.    Defendants have failed, as a matter of common corporate policy and practice, to include bonuses in the calculation of the overtime due in overtime weeks for Plaintiff and the other Bonus Recipients.

147.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is a violation of the NJWHL, N.J. Stat. § 34:11-56a *et al*.

148.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is knowing and willful.

149.    Plaintiff and the other Bonus Recipients are entitled to overtime wages, interest, attorneys' fees and costs for Defendants' violation of the New Jersey Wage and Hour Law.

## PRAYER FOR RELIEF

150.    WHEREFORE, Plaintiff on behalf of himself and the Putative Class Members respectfully request that this Court:

A.    Order Defendants to pay the unpaid overtime compensation owed to Plaintiff and the Putative Class Members;

B.    Order Defendants to pay Plaintiff and the Putative Class Members for unpaid non-overtime (straight) wages;

C.    Order Defendants to pay applicable liquidated damages and statutory penalties to Plaintiff and the Putative Class Members;

D.    Order Defendants to pay pre- and post-judgment interest as well as the litigation costs and reasonable attorneys' fees for Plaintiff and the Putative Class Members; and

E.    Grant such further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a jury trial on all the issues so triable.

## <u>CERTIFICATION</u>

It is hereby certified that, pursuant to L.Civ.R. 11.2, that to the best of Plaintiff's counsel's knowledge, the matter in controversy is not presently the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. There is, however, a related case brought in the Western District of Pennsylvania titled <u>Lee v. Bridgestone Americas, Inc., et al.</u>, 2:20-cv-1427-CRE (W.D. Pa.) that primarily asserts claims under Pennsylvania law.

Dated:  January 21, 2021

s/ R. Andrew Santillo
R. Andrew Santillo, Esq. (NJ ID #025512004)
Mark J. Gottesfeld, Esq. (NJ ID #027652009)
**WINEBRAKE & SANTILLO, LLC**
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone:    215-884-2491
Facsimile:    215-884-2492
Email:  asantillo@winebrakelaw.com
Email:  mgottesfeld@winebrakelaw.com

Joseph H. Chivers, Esq.
*pro hac vice application forthcoming*
**THE EMPLOYMENT RIGHTS GROUP, LLC**
First & Market Building, Suite 650
100 First Avenue
Pittsburgh, PA  15222
Telephone:     412-227-0763
Facsimile:     412-774-1994
jchivers@employmentrightsgroup.com

*Counsel for Plaintiff*
*and similarly situated employees*